We will hear from Mr. Taylor. Good morning. My name is Nelson Taylor and I represent Ms. Randolph, who is the pathologist. The record contains a lot of excerpts and it was decided on a summary judgment. As always in my understanding, a summary judgment means that the court has determined that there are no facts in dispute and determined that as a matter of law, one side or the other wins or loses. In reading this record, what I think has been determined is that the judge has literally held this trial, made findings of fact and conclusions of law, based upon, in some cases, credibility of witnesses who have testified for her, extracted from the documents themselves. I don't think the case is very complicated. It's a due process case. One of the things that the court says is that it recognizes that Ms. Randolph had a property interest in her employment, but then goes on to say that the violations of state law that gave her that property interest are no consequence. We, of course, disagree. The problem here is that Ms. Randolph was an experienced teacher, 35 years, and they promoted her to a position that they now claim is infringement. There's absolutely nothing in the record that says they told her that. There's absolutely nothing in the record that they defined this position as an interim position, what its terms were, how long could it be interim. There is no contract that we have set forth in our brief that the state law requires a contract. The word interim has been used as synonymous with temporary. There's nothing in state law about an interim position that you have some provisions about temporary positions, but it requires a contract, it requires very careful things that protect the teachers. Do I understand correctly that it's the superintendent, Dr. Taylor, who made the decision to terminate? No, she was not terminated. She resigned from her position on the basis that they cut off her income, they made accusations against her. She is desperately trying to get a due process hearing from somebody. I guess what I'm trying to say, I misspoke, but is it Dr. Taylor who took the action that you're complaining about? It was Dr. Taylor as well as supervisor employees of the school board who took the actions. Is Dr. Taylor a defendant right now? No, he's not. He disappeared. Nobody could find him. The defendants said they didn't know where he was and so we never could serve him with the complaint. That's why he is not in the lawsuit. That's what they told us. We had no access to where he was. We could never take his deposition or anything. The judge has taken statements that he made in a letter and given credibility to those things that he said and we objected to that and we object to it before this court. She stayed around. She kept reading the records. She kept trying to get hearings. She kept objecting to the things that they said. She objected to her emotion. They put her back into a classroom in an elementary school where they wanted to put her. She's not an elementary school teacher. She's a highly qualified master's plus 30 high school teacher. How old was Ms. Randolph when all this was happening? That's a good question. In her 50s. And had been in the school system. It all starts with someone making an accusation against her. The record doesn't reflect what it is. You can't tell from the record what it was. I think she may have something about taking a student home or something like that. But the accusation was never put to her in writing. She never had a chance to defend against it. And she asked for a hearing. She asked for due process. Over and over. Her reputation is being impaired. And of course she's having the problems when something like this happens. You've got the stress, the emotional distress on her body. She keeps asking for a hearing. They never give her a hearing. They never explain what it is that is being held against her. And then there's a letter that the judge uses to say she's an obstinate non-cooperative. And that's a quote from Dr. Taylor. And given the credibility of Dr. Taylor's quote at that point, I think it's just thoroughly unfair. The judge makes a distinction that violations of state law does not constitute a violation of the Constitution. Well, her rights come from state law. And her tenure rights come from state law. That's what it's based upon. The violation of the Constitution, 1983, certainly is a due process issue. Asking for a hearing from the government, asking petitioning the government for your grievances. These are constitutional issues. Does state law say anything about interim positions? It says nothing about interim positions. So you're either on contract or you're not on contract? You're on contract or you're not. We went through a discussion of how the contract principle works. You get a contract as an administrator. And Ms. Randolph had a contract. You don't have to renew the contract every year. And we pointed that out. And that when she was promoted to the position of principal of this school, she was operating under the position that her contract was still in force and effective, etc. There is nothing in this record other than after the fact of them telling her that she had interim positions. Or what's the term of the interim positions? Interim could go on forever at their pleasure. We suggest that the local school board does not have the authority to come to the legislature and create a position that would avoid the issues that are raised by the state tenure law. And that's exactly what they're trying to do. They created this interim. This interim is not part of state law. It is not that the state law does have a provision for temporary. Did you sue her under state law? I mean, sue on her behalf under state law? Yes, ma'am. I'm sorry. We sued them and the jurisdiction. The greatest constitutional crimes of 1983 is all there. And now I'm going to complain about everything. No, but I mean, did you sue in state court? No, we did not sue in state court. It all became, it was initiated in 1983, violations of her due process. And that they violated her due process rights when they demoted her and refused to give her a hearing. Well, if her employment contract, as the system principle says, if during the term of this contract she is offered employment to a position of higher salary, then such appointment shall cause this contract to have no further effect. Now, what's the, is that a standard contract provision? That's a standard contract provision, but when it says it has no effect, it has no effect with respect to that job position. But the point is that they never gave, they were supposed to give her a contract for the promotion. They didn't. They did not give her a contract. They were supposed to. They never said why they didn't. She was entitled to a contract under state law. And to- Which state law entitles her to that contract? What's that? Which state law entitles her to a contract for the promotion? 1744, 444, is the state tenure law. And so that says that if you have, as I read 1744, it says if you have a contract, then you have certain protections under state law. But I don't see anything in the statute, at least that one, that says you must be offered a contract for the new position. It does. It says you have to, it says that even with a temporary position, you have to have a contract. You have to specify the terms of the position, how long it's going to be, what the rules are. You have to have a contract in the Louisiana law at all times regarding employment and promotions, whether temporary, interim, or whatever. Our problem with this is there is nothing about interim in state law. There is no provision that prevents or stops a contract or does not require a contract. This is a comprehensive law to protect teacher rights, their due process rights, and to ensure fundamental fairness. And what you have here is you have officials of the school system, and the school system has to know and endorse these contracts because it's part of their policy. They knew what Dr. Taylor was doing. The depositions clearly showed that they knew what they were doing. They gave interim contracts. What is it? What does it define? It's not defined by state law. It is invented by the local school board. They made this up. When she was on administrative leave, did they ever conclude that investigation? No, they did not. They never included any investigation. She made several charges, even to the school board itself, trying to get a hearing to determine the fairness of what they were doing. That's what due process requires. They have a due process policy, as we pointed out briefly. They refused to follow that policy. The record also suggests that they tried to follow it, but they couldn't get in touch with her, that she would only communicate with them by letter. She's disputed that. If that's a material fact, she's certainly disputed that material fact. In her deposition? In her deposition. In her pleadings. How else did she try to communicate when she was trying to get the hearing and have it disputed? In writing. She gave written requests for a hearing. From the very first demotion, she requested it in writing. And they started an investigation, never concluded it. I think there's something in our brief that suggests, I don't know what they were trying to do. But at some point, one of the defendants, the attorney for the school board, made a request to the school board to terminate the time limits for holding a hearing. Because they had missed all the time limits that were available to Ms. Randolph. They missed them all. And so they passed a rule that investigations no longer had a time limit. And I don't know whether they thought that was retroactive or not, but the fact is, they never concluded any hearing. They never concluded or gave up findings of any investigation. They paid her, and then at one point, they stopped paying her. They just cut her off. Are you familiar with Board of Cleveland v. Loudermill? Yes, I am. So you're saying that was not complied with? Certainly not. Not in any aspect was it complied with. This is the government. This is not just somebody out there doing something. This is a governmental body that has a responsibility not only on the state law to provide due process. It does provide in its laws. But they have a responsibility to provide due process under the 14th Amendment of the Constitution. And we certainly believe that we have raised that issue. We certainly believe that we have articulated facts that give us an entitlement to at least a trial of a fact-checking issue. And we have not had an opportunity. We disputed everything that they said in our briefs. You're about to run out of time. Do you want to talk about the Cobra claim real quick? They didn't do what they were supposed to do. I thought we pointed it out. They just didn't do what they were supposed to do. Did the district court ever actually rule on this? No, it did not. It just summarily said it had no merit. She didn't go into any details about why. We submitted a brief to her with respect to the reasons for that. But she never discussed it. There's a paragraph in there where she just says she dismissed all of the claims. This concluded that it had no merit. But she didn't discuss it. She didn't give us a chance to get into the facts, that they did not send her the proper notice. We briefed her. In their brief, they say, I believe, that your client had the right to continue her coverage. Well, they didn't give her notice of that. They didn't follow the requirements of law in terms of what the notice was. They didn't tell her that. And, of course, we certainly say, yeah, you may have that right, but when you have been discharged under these circumstances, it's a hardship for people to be suddenly treated like this. They just cut off her salary and didn't say anything, wouldn't give her a hearing. I think that's fair. You have time for rebuttal if you want to, or five seconds. I only have five seconds to write. We wrote the best brief that I could write. And I've said it, and I'm sure you all have read it. We put our record excerpts in, and I think I've just said what we've already said. Well, you have time for rebuttal, five minutes, if you choose. Thank you. Sure, thank you. Good morning, Your Honor. Good morning, Mr. Joyner. My name is Courtney Joyner, I represent the appellate. Pardon me? My name is Courtney Joyner, I represent the appellate. Yes, sir. I would like to start with COBRA because that's the last issue that was discussed, and I was fresh on your minds. This situation is somewhat unique because you have, under the school board policy, retirees are entitled to continue their insurance coverage through the school system, Blue Cross. What happened in this situation was after Ms. Randolph retired, the school system continued to pay their portions of the premium, as evidenced in her petition for damages. She was offered continued coverage. She declined continued coverage, and our affidavit states that the coverage would have been retroactive to August of 2015 had she paid her portion of the premium. So it's not necessarily a true COBRA case in the sense of there may have been a qualifying event through her retirement, but the school system continued to pay her premiums, and the reason why it was cut off through the plan administrator was because she did not pay her portion of the premiums. Whenever it was brought out to light, a COBRA notice was issued to her, but the school system also offered to continue her coverage had she paid her premium. She not only failed to pay the premium, but she also declined the COBRA coverage as well. But how long was it before the school district gave her any notice? Between the time that she resigned and the time that, wasn't it about 15 months? No, Your Honor. The time she resigned, it was effective, accepted by the school system in March of 2016. From that time, they continued to pay her portion of the premiums until about September of 2016. But she didn't know that. She didn't, am I not correct? She did not know that they were still paying her portion of the premiums. I do not believe that she did know that. Right. But the premiums were still being paid, and once the mistake, I mean, this is common, this happens in the school system a lot where somebody retires and you go to one department and the next department doesn't know, and so her premiums were paid. And to fix, to alleviate the mistake, they offered, well, you pay your portion of the premium, your health insurance will continue. It was declined. But there's no dispute that she should have received a COBRA notice within 14 days of her termination, I'm sorry, her resignation. Of the qualifying event, that is correct. There's no dispute that that's a qualifying event. That is a qualifying event. And she should have gotten the COBRA notice. Correct. Got it. Did the district court ever rule on this claim? Your Honor, the district court did not address that in the written reasons for the judgment. They did dismiss the claim, but it wasn't in the court's opinion. When did the district court dismiss the claim? It was in the judgment that was issued after the written reasons. That was just some oral, did the judge just give some oral indication and it didn't get in the docket? That's what I thought might have happened. Your Honor, we were scheduled for trial about a week before the opinion came out, and it just wasn't addressed. It's not a complicated case, but there were so many issues, it just was left out. When did you find out that the COBRA claim was no longer in the case? Was it when you got the summary judgment order, or was it before that? It was after. The summary judgment order did not, yes, Your Honor, it was in the summary judgment order. It was in that footnote, right? Correct. Because the concern I have is the footnote doesn't say that it's been dismissed. It says that it's already been dismissed. Right, and it is somewhat confusing, Your Honor. I agree, and there was never a dismissal before the summary judgment came out. There was never a dismissal of that claim. Well, do we need to remand at least on that issue, just so the district court actually rules on it? Or do you think we can affirm on this record? I think you can affirm on the record, Your Honor. I think you can affirm on the record because even if there was a notice violation, there are no damages because the school system offered to correct the mistake, to make it retroactive. She declined to continue coverage, and she declined to COBRA as well. Well, if I understand the timeline, she shows up at a doctor's appointment in September of 2016. Correct. And the school board's position or the school system's position is that in September of 2016, half of the premium, or whatever, the employer's share was being paid. Correct. But she had no reason to know that she was supposed to be remitting, presumably to the insurance company, her portion of the premium. Correct. So she was damaged at least in the sense that she showed up at the doctor's office in September of 2016 without insurance coverage, and she didn't know why. I disagree with this from the standpoint of there was an error, and they offered to correct the error. And so as far as she – if there are any damages, the damages could have been alleviated had she continued her coverage. But doesn't COBRA provide for statutory damages? It does from a – and it was just recently addressed in a decision from the Fifth Circuit. There's a $100 per day penalty. The Fifth Circuit held that there may be damages for – possibly for the unpaid medical procedure. I don't think that would apply in this case because of the facts. This case is unique from the standpoint of there was an error by the school system. They attempted to alleviate the error, and the plaintiff didn't take advantage of the opportunity that was afforded by the school system. So because the statute says 29 U.S.C. – I can't remember the exact citation, but it does say may. There may be a $100 per day penalty. It does not require that there is a $100 penalty. And we think under these circumstances that there shouldn't be a penalty because of the efforts that were taken by the school system to give her COBRA notice, and not only to give her COBRA notice, but also to offer her that opportunity to make her retiree insurance or employer insurance retroactive back to the date that it would have terminated. Mr. Joyner, what was the nature of the parent complaint against Ms. Randolph? There were two complaints that were filed. The first complaint – by the same parent. The first complaint was because apparently Ms. Randolph took it upon herself to remove a student from the school system – from the school. The second complaint was because of a verbal dispute between the parent of the student that was removed from the school and Ms. Randolph. Well, that sounds like a pretty conventional dispute over discipline. You're correct. So how come this never proceeded to some kind of adjudication within the school system? The matter was adjudicated, Your Honor. You will see in a record there was correspondence that went out that scheduled a meeting for September 30th of 2014 to discuss the results of the investigation. That was sent by Millie Williams, who was the personnel director. Ms. Williams also in her deposition testified that the investigation necessarily couldn't be completed because of the actions of Ms. Randolph. And so there was an attempt to adjudicate the complaint, but those efforts were stymied by the plaintiffs. But if you – but still, it seems to me that – I don't know. I find it very difficult to understand how the woman is placed on administrative leave because of one discipline matter. She was – and Ms. Williams testified about that. What they do while they investigate, they place you on administrative leave with pay. Well, every time you kick a kid out – I mean, I think it's common knowledge that school systems have difficulty disciplining students nowadays. And I assume that kid went to an alternate school? No, the student was prohibited from being on that particular campus because of a disciplinary issue that he had the previous year involving a teacher. So he wasn't in an alternate school setting. He was just at a different elementary school. Okay. And I think there's a difference between, quote-unquote, when you say kicking a student out where you fill out the paperwork and the student is removed, as opposed to what happened here is you take the student without parent authority, without contacting the parent, put him in your car, and take him home. That's the difference. That's the dramatic difference. This kid was a kindergartner, and so that wasn't necessary under the circumstances. So that's different. This is not a situation where Ms. Randolph – a kid got in a fight or is accused of being – some type of making physical contact with a teacher, and she takes action to remove the student through the proper procedures. The policy says that you can't transport students in your – for obvious reasons, in your own vehicles. So she violated that policy as well. This incident is not necessarily about those two complaints. It's what happened. Afterwards. During the investigation of those complaints because the administrative leave form says that you are supposed to remain accessible during normal hours. That's for a reason. So you can participate in an investigation. Also, Ms. Randolph, during her deposition, admitted that she sent correspondence to a board member regarding mentioning the word suicide as well. And so it was the aftermath of what happened. Dr. Taylor, Judge Ho, as you mentioned, is not a defendant in this case. I find it hard to imagine that she would have been terminated just for those two complaints, but it was what happened after and during the investigation process. So the investigation was completed to the extent that the school board did everything that they needed to do as far as, at the school level, talking to the other staff members and concluding the investigation. It was done to the extent that Ms. Randolph did not participate. Okay. But a major part of their argument is that she had a contract right that couldn't be property right for due process purposes. And so you look at her contract and there's this business about, that I quoted to Mr. Taylor, about if during the term of this contract she's offered employment at a higher salary, then the acceptance shall cause it to have no further effect. So is it the school board's position that she had no contract rights during the period that she was interim principal? That is correct. She didn't have a contract. She was not required to be issued a contract in accordance with the provisions, the wording of the Louisiana Revised Statute. But she must have had some kind of tenure. Right. And so how it works is, and you'll notice what happened, the position of principal was classified as interim position. On the 444, if you are terminated from a position and you require tenure, and you're removed from the higher position is what we call it, regardless of whether it's a contract position or not, once you're removed from that position, you are returned back to your last tenure position. So what we do in practice is we terminate from both positions. Dr. Taylor's letter only terminated her as an interim principal. You'll notice that the record will show there's a letter dated October 9th of 2014 where he attempted to take disciplinary action based upon her status as a tenure teacher. That proceeding, which is the basis of her constructed discharge claim, was abandoned. Dr. Taylor decided not to take disciplinary action against her as a tenure teacher, and that's why they offered her subsequent employment. So you're saying that she had, okay, so what she had was no property right in being the interim principal. That is correct, Your Honor. What do you do with 444, subsection B, 4A, RomeNet 1, that says that such employment is for a temporary position, not more than four years, and such term shall be specified in a written contract? Does that not impose a burden on the school system to provide her a written contract? No, Your Honor, not in those circumstances. Is it because there's a difference between interim and temporary? That is correct. And what is that distinction? It's how it's classified. It's up to the discretion of the superintendent. And so in this situation, what happened was the teacher, Dr. Randolph, was among a class of employees, a group of individuals that interviewed for principal positions. Dr. Taylor decided, for reasons unknown to us, to classify them as interim employees. And that can happen under numerous circumstances where, let's say, for example, you have five or six candidates, you interview, you're not impressed with all of the candidates, and you say, I will make this an interim appointment. Or, let's say, for example, the principal of a school the second day gets into an automobile accident and is no longer able to work, and you appoint somebody on an interim basis. So that's the theory behind it is you should be allowed, under those circumstances, to hire someone on an interim basis to see if it will work out. What I can tell you is that's the practice, and there has never been an issue with anyone being terminated without any type of process. This is a unique situation, and this is, again, by Dr. Taylor, who, as you mentioned, Judge Ho is not a defendant in this case. He made the decision to terminate her under the processes that he used. And so it's our position that she falls into one of those categories of being placed on an interim basis, and you're not necessarily given a contract. But the statutory text seems to suggest that you need to provide a contract with a term. You can pick whatever term. It says for certain positions, you know, superintendent has one term, normal contracts have terms that are not less than two years. But if it's temporary employment, you can pick whatever term you want. You can pick two weeks, six weeks, eight weeks, six months, two years, whatever you want. But it does say it needs to be specified in a written contract which shall contain performance objectives. So I'm not sure how changing it from a temporary to an interim, which is not a statutory term, changes the statutory obligation. Correct. How the statute has been interpreted is that those nine words, unless it's for a temporary position, you don't issue a contract at all. That's how it's been interpreted. By the Louisiana courts? By the schools. This is a matter of first impression. This is not, and the appellant mentioned Smith v. Washtenaw Parish in their brief. The court did hold that 444 requires you to give a contract, but the language of the statute was different at the time. It did not include those nine words. And so this is, again, this is a matter of first impression. Also, I'd like to make the point of this. The court did determine that she did not have a property interest in her continued employment as a principal. That decision was the right decision based upon our reading of 17444. But even if the court were to determine that she did have a property interest in her employment, the court's decision that the school system is not liable still stands because the court determined that she didn't comply with Moneo. So if you looked at the plaintiff's motion for summary judgment, she appears to argue that Moneo doesn't apply to the school system for some reason. The court goes through a very thorough analysis. The decision to terminate Ms. Randolph was made by Dr. Taylor, who is not a policymaker under Louisiana law. He's actually not even a final decision maker because his authority under 443 is to issue what's called an interim decision that's subject to review by a hearing officer. So you don't have the policy, policymaker. Also, in her brief, she identifies for the first time on appeal a policy that she claims that applied. That argument is weighed, Your Honors. Also, that policy, there's a distinction between hiring and firing. If she, for example, was hired without a contract, if that's the custom, which we don't believe that she established a custom, but if that is a custom, hiring would not comport with 444, but it doesn't implicate due process because due process applies to deprivations. Hiring without the contract doesn't create a deprivation. Terminating without a contract, without the process, would create a deprivation. And so that custom, at best, shows that it doesn't invoke the due process clause. Also, Your Honors, the last element of Monell, it was a single sentence in her appellate brief, in the paragraph in her opposition to the motion for assignment judgment, the moving force. She did not meet any of the elements of Monell. And so as I wrote in my appellate brief, the existence of a property right or constitutional violation is only part of the process. The court held that the remaining part of the process, which requires compliance with Monell, was not met. And so the result is the same, whether or not she had a property interest or not, because she didn't comply with Monell. Also, as it relates to the finding of qualified immunity, we had a two-part argument. The first argument was they were entitled to, I mean, Section 1983 claims against individual defendants. The first part of that argument, Your Honors, was this, they were entitled to qualified immunity. The fact that we had to interpret the statute shows that if there was a constitutional right, their right was not clearly established at the time of the alleged violation. And so the individual defendants would be entitled to qualified immunity. Also, from the personal participation standpoint, again, Dr. Taylor is not a defendant in this case. He sued the current superintendent, Warren Drake. He wasn't even employed by the school system when she was terminated, and none of the remaining defendants, Your Honors, were involved in the decision to terminate her. When we talk about the actions of Millie Williams or Charmaine Rutledge or Damore and Rutledge, they dealt with this process of whether or not she gets a copy of the complaint within five days. That policy doesn't invoke due process. It doesn't even violate state law. It's a policy that the school system has for efficiency purposes. Also, if they weren't entitled to qualified immunity, which we believe they are entitled to qualified immunity, we also argue that she didn't prove Section 1983 claim against the individual defendants as well. As it relates to David Tapman, the board member, the color law element is missing. So what she says is he failed to act. Well, there has to be a duty to act. There was no duty to act because he has to act as a whole, as a board. Also, as it relates to the remaining individual defendants, again, they are accused of violating policies, some of which may have been required by state law, some were internal policies, none of which involved the constitutional rights as well. So what we have to do is you have to look at each individual defendant. So while there was a removal on September 30th, that removal was effectuated by Dr. Taylor, who again is not a defendant in this case. Well, let me just move back to a bigger picture for just a second. And that is that you say that she had no property right, but you're giving her due process in the sense that you're having an adjudication, an investigation with which you say she didn't cooperate. And that seems to me if she had no property right, you wouldn't even have to do that. You could just remove her and say you go back to the classroom. Correct? So a jury, yeah, I mean, I guess my question is could a jury look at that and say, sort of backwards looking, say, well, Louisiana law seems to say she's supposed to have a contract when she's promoted, but to interim, temporary, they seem like the same thing. You ought to have a contract, but you didn't have a contract. You say no property interests, but you purport to conduct an adjudication as if she had a property interest. So should that go to a jury? No, Your Honor, it should not. The investigation process is because we want to be fair. That was done in the interest of fairness. It was done in the interest of how they process any type of grievance, I mean, any type of complaint that was given involving similar actions of similar employees. So compliance with that investigation policy doesn't necessarily connect to whether or not she has a property interest, because janitors, paraprofessionals are not entitled to contracts under Louisiana law. However, they would be entitled to that same process as well. And so it doesn't necessarily connect between that procedure with due process. The law is clear that she is not entitled to a contract if it's for a temporary position. Temporary is synonymous with interim. And at the end of the day, the result is the same, regardless of whether or not she had a property right, because she didn't comply with Monell as it relates to the school system. Thank you, Your Honor. We have your argument. Thank you. Mr. Taylor, do you want to do any rebuttal? Thank you. On appeal, the appellees are doing the same thing that they did in the trial court. They're making arguments about Dr. Taylor and what he said and what he thought and why he did and what he did. They don't have any evidence of that. We could have gotten Dr. Taylor at trial. We couldn't get him before during the summary judgment. We're still looking for him. But there are speculations about why he did what he did. We only know the conclusions. There was no investigation. They didn't complete an investigation. The record clearly reflects that. She's asking over and over for them to give her a chance to defend herself. She was not terminated. She was just removed from her job and then had no opportunity to explain, had no opportunity to defend. They're talking about complaints against her. They never came before her. They never issued any conclusions about what those complaints were. There's nothing. She had no opportunity to do anything. Now, this merger of interim and temporary is simply unfounded. It is not that provision of temporary under state law is very clear about what you're supposed to do. Interim is invented by the school board. He's standing there explaining their policy. It's their policy. It's a school board's policy. He's explained what it is. And what it is is what they did. They have a policy that circumvents the entirety of the state tenure law, which was there to protect teachers from this kind of arbitrary, capricious action. That's what it's for. And the allegation that she didn't cooperate is spreading time. You know, she was there. They were paying her. They made no action. If she wasn't cooperating to that extent, why didn't they fire her? They didn't. They just did things and, in the end, cut off her salary. And she had, you know, no choice but to resign, at least to get her retirement benefits. But the fact of the matter is, is that interim is an invention of the East Baton Rouge Parish school system. They invented that. And they invented it, whether they will admit it or not, for a specific purpose, to make sure that they could terminate people without complying with due process, which is exactly what they have done in this case. Whether she was interim or not, interim is a definition that only they know. It's not in their policy, written policies. It is nowhere explained. There's no correspondence from them to Ms. Randolph that you are appointed with an interim position where you waive all your due process rights. There's no notice of these things. It's nowhere. It's something they sprang on her. You know, they removed her from a job for what sounds to be minor stuff, for which there could have been an explanation, for which there could have been a hearing, for which she could have been exonerated. They chose not to. And, Your Honors, I would suggest something to you since, you know, councilmen speculated about why they do what they do. One of the reasons why they do what they do is that supposing Mr. Dr. Taylor or any of these other individuals decided they wanted somebody else to have that job. You know, you want to give it to somebody. Not by anything she did. You don't see anything in the record about any adverse performance by Dr. Randolph. There's nothing. She was a tremendous teacher. She was an administrator. She was appointed an assistant principal. She was then promoted, I guess because of her experience and because she was a good administrator. There's nothing in the record that suggests that she was not a good administrator. There's nothing that suggested while she was on this job that she did not perform it well. Nothing. They begin a process that says you don't have a right to a hearing. She's writing them letters, looking at the record over and over, begging. She's a lay person. She's begging for a hearing. Let me defend myself. Let me do something. And they won't do it. They won't do it. And now they're spreading things over time. You know, she didn't cooperate. You know, toward the end of the process, when did she not cooperate? She's asking for a hearing. They're promising her a hearing. So we're going to give you a hearing. They're promising an investigation. There's nothing in this record that demonstrates they ever did an investigation. Finally they say we're not going to do it anymore. We're just going to abandon it. I think my time just went up. Thank you very much. Yes, sir, it did. Okay. Thank you very much. We appreciate it. Thank you.